## Little *versus* Stanton.

In an action of account render, the court has no power to reform the auditors' report, unless an issue of fact, or of law, be demanded before the auditors.

Where, in a settlement between partners, it was agreed that there was due to A. from B. $295.86, to make him equal with B. in the outlays; it was *held*, that this was an acknowledgment of indebtedness from B. to A., and not from the firm to A.

ERROR to the Common Pleas of *Somerset county*.

This was an action of account render by Henry Little against Alexander V. Stanton, his late copartner.

In 1850, the parties entered into partnership for the sale of "Patent Saw Mill Dogs." And on the 18th June 1851, the following settlement was made between them:—

"June 18th 1851.—Henry Little and A. V. Stanton settled up the business of the partnership of the Patent Saw Mill Dogs, and A. V. Stanton is due H. Little two hundred and ninety-five dollars and eighty-six cents to make him equal with the said Little in the outlays; and is entitled to the half of all the machines unsold. And the said Stanton agrees that Little shall receive the pay hereafter of all the machines sold, until he receives the above amount; and the said Stanton also agrees to pay F. Rininger fifty dollars due by them jointly, and Little to pay for the last three machines got from Pittsburgh, amounting to eighty dollars. The said Little to have the pay for the following machines: John Spangler's, Jesse Griffith's, and the one at Thomas's mill. The said Stanton agrees to use all his exertion to make sale of the dogs. Witness our hands, the date and year above written.

"H. LITTLE,

"Attest—S. G. MILLER."        "ALEX. V. STANTON."

Judgment *quod computet* having been entered, auditors were appointed, who treated the above instrument as an acknowledgment of indebtedness from the defendant to the plaintiff, and reported an account against the defendant, showing a balance of $308.10, in favour of the plaintiff.

To this report, the defendant filed exceptions, and the court below, being of opinion that the settlement of the 18th June 1851 was a statement of the account of the plaintiff with the firm, reformed the account reported by the auditors, and gave judgment for the plaintiff for $157.31. Whereupon the plaintiff removed the cause to this court, and here assigned the same for error.

*Hugus*, for the plaintiff in error.

*Baer*, for the defendant in error.

[Little v. Stanton.]

The opinion of the court was delivered by

STRONG, J.—In this case there had been a judgment *quod computet.*. Auditors were then appointed, and they stated an account showing the sum of three hundred and eight dollars and ten cents to be due from the defendant to the plaintiff. Before the auditors no issues of fact or of law were demanded by either party, and none were certified into the Common Pleas. But when the report came into court, exceptions were filed to the construction which the auditors had given to an agreement proved before them, and the court, without sending the report back to the auditors that they might certify an issue of law, corrected it, and entered judgment for a smaller sum than the account stated showed to be due.

This was entirely irregular. A report of auditors in an action of account render is totally unlike in effect to a report of auditors in an Orphans' Court. It is not subject to revision by the court upon its merits. The report is final both in fact and in law. True, while the account is pending before the auditors, either party may demand that an issue of fact or of law arising in the case may be sent to the court for decision, and the decision will be binding upon the auditors; but if either the fact or the law be submitted to the decision of the auditors in the first instance, their adjudication is the end of controversy. It is not subject to the revision of the court. The court can interfere only where auditors have been guilty of misconduct. This is the law in England, whence we obtained the action of account render, and with the exception of one or two of our very early cases, it has always been the law of Pennsylvania. Before the year 1807, exceptions to the merits either in fact or in law, of an auditor's report in account render, had been allowed in a very few cases; but this court then determined that thereafter such an innovation upon the rules of the action would not be tolerated: Snyder *v.* Caster, 4 *Yeates* 358; Gratz *v.* Phillips, 3 *Binn.* 475; and Moore *v.* Hunter, reported in a note to the same case. In Crousillat *v.* McCall, 5 *Binn.* 433, the rule is unqualifiedly asserted, and it has ever since been the recognised law of the state. The exceptions which were filed to the auditors' report in this case were therefore a nullity, and should have been disregarded by the court.

But were it not so, it appears to us that the auditors placed a correct construction upon the agreement of the parties which formed the basis of their report, and of the account stated by them. The agreement was as follows:—" June 18, 1851.—Henry Little and A. V. Stanton settled up the business of the partnership of the Patent Saw Mill Dogs, and A. V. Stanton is due H. Little two hundred and ninety-five dollars and eighty-six cents to make him equal with the said Little in the outlays, and is entitled to the half of all the machines unsold. And the said Stanton agrees that Little shall receive the pay hereafter of all

[Little *v.* Stanton.]

the machines sold, until he receives the above amount; and the said Stanton also agrees to pay F. Rininger fifty dollars due by them jointly, and Little to pay for the last three machines got from Pittsburgh, amounting to eighty dollars. The said Little to have the pay for the following machines: John Spangler's, Jesse Griffith's, and the one at Thomas's mill. The said Stanton agrees to use all his exertions to make sale of the dogs." The court below thought this to be only an acknowledgment that there was due to Little *from the firm* $295.86, and consequently that, in adjusting the account between the partners, Little was entitled to only one half of that sum. Such a construction is in direct conflict with the words of the agreement. The parties declare, not that the firm owes H. Little, but that A. V. Stanton owes him the ascertained sum of money—not that Little had paid into the firm $295.86 more than Stanton, but that the latter must pay to Little that sum of money before his investment would be equal. When that payment should have been made, to *Little, not to the firm,* Stanton would have as much invested as Little, and after Little had received that sum, he was still to be an equal owner of the unsold machines. The agreement was not a settlement of the partners with the firm, but with each other.

There is provided, however, a mode of payment of the stipulated sum, which is supposed to show that the meaning of the parties was that the debt was due from the firm and not from Stanton. It was agreed, that Little should thereafter receive the payment of all the machines sold until he should have received the above-mentioned sum. It is argued, that this proves the understanding of the parties to have been that all which was due to the plaintiff was $295.86 *from the firm.* It is plain, however, that this provision was not intended to designate the amount due, but to provide a mode of payment of a sum already ascertained. It is not even intimated, that the receipt of that sum from the proceeds of sale of the machines would satisfy the debt acknowledged to be due from Stanton. The most that can be claimed for it is, that it raises a slight implication; but that is insufficient to prevail against a direct acknowledgment.

This view of the agreement is corroborated by the other parts of it. They stipulated that the parties should thereafter pay for the firm unequal sums, a stipulation inconsistent with the construction that the receipt by Little of $295.86 out of the firm property was agreed to be an equalization of the investments.

But without pursuing this investigation farther, it is sufficient to say that the court had no power to reform the auditors' report, no issue of fact or law having been certified to them.

> Judgment reversed, and judgment entered on the report of the auditors, against the defendant, for $308.10 with interest from July 28th, 1856.